# IN THE COURT OF APPEALS OF IOWA

No. 21-1008
Filed June 29, 2022

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**WILLIAM LEE COLEMAN,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Adams County, Elisabeth Reynoldson, Judge.

William Coleman appeals his convictions for interference with official acts and assault on a peace officer. **AFFIRMED.**

Richard Hollis, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Thomas J. Ogden, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Badding, JJ.

**VAITHESWARAN, Presiding Judge.**

William Coleman appeals his convictions, following a jury trial, for interference with official acts and assault on a peace officer. Coleman contends the district court erred in denying his second suppression motion and in refusing to submit his requested jury instruction on a defense of justification.

## I. Background Facts and Proceedings

The Adams County Sheriff's Department received a report of a car accident. A deputy sheriff spoke to eye witnesses, who told him a vehicle was "going [at] a high rate of speed, missed the stop sign, . . . missed another sign, . . . and then crashed into the ditch." The deputy found the vehicle unoccupied and determined it was owned by Coleman. According to the witnesses, Coleman said he was going to his brother's house and left the scene. They described what Coleman was wearing.

Meanwhile, Coleman called dispatch. The deputy returned the call and told him to come to the scene of the accident. Coleman demurred. The deputy ordered the car towed, then called Coleman back again, "[b]ecause he was involved in an accident and [the deputy] was trying to figure out what was going on and if there was something more than just a simple accident." Coleman again declined to disclose his whereabouts, as did family members.

Shortly thereafter, the deputy decided to follow a vehicle driven by Coleman's mother. He stopped the vehicle for a cracked taillight. The ensuing encounter was captured on video.

Coleman was in the front passenger seat. The deputy repeatedly ordered him out of the vehicle, his tone and language escalating, as Coleman refused to

comply with the order. The deputy called for back-up and told Coleman, "I'll bust the window if that's what you want." As he continued to exhort Coleman to get out of the vehicle, Coleman hit the deputy's hand. When backup arrived, the passenger window was broken, and officers forcibly removed Coleman from the vehicle.

The State charged Coleman with interference with official acts while attempting to inflict serious injury, in violation of Iowa Code section 719.1(1)(f) (2019), and assault on a peace officer, in violation of sections 708.1 and 708.3A(4). Coleman filed two motions to suppress and a motion to dismiss, all of which were denied. A jury found Coleman guilty of the lesser-included offense of interference with official acts and assault on a peace officer.

On appeal, Coleman (A) challenges the district court's ruling on his second suppression motion and (B) argues the jury instructions "should have included [his] justification defense."

## II. Analysis

### A. Suppression Motion

"Both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution grant people a right of protection against unreasonable searches and seizures of 'their persons, houses, papers, and effects.'" *State v. Hunt*, ___ N.W.2d ___, ___, 2022 WL 1592167, at *2 (Iowa 2022) (quoting U.S. Const. amend. IV; Iowa Const. art. I, § 8). "These rights safeguard people against warrantless searches and seizures by the government, with carefully drawn exceptions." *Id.* A temporary detention of individuals during

a traffic stop amounts to a seizure of persons within the meaning of the Fourth Amendment. *See State v. Hauge*, 973 N.W.2d 453, 458–59 (Iowa 2022).

Coleman does not challenge the validity of the deputy's initial traffic stop. *See id.* at 458. Nor does he argue for a distinct analysis under the Iowa Constitution. *Cf. id.* at 459–60 (declining the defendant's request to decide whether a heightened standard should be adopted under the Iowa Constitution); *State v. Price-Williams*, 973 N.W.2d 556, 562 (Iowa 2022) (same). Accordingly, we will confine our analysis to the Fourth Amendment.

Coleman preliminarily notes that the deputy's "sole purpose in ordering [him] out of the car was to further his investigation." *Cf. Hauge*, 973 N.W.2d at 459 (noting the parties "agree that [the deputy's] order for [the defendant] to exit the vehicle was lawful under the Fourth Amendment"). But, as the court noted in *Hauge*, the United States Supreme Court has "held an officer may order a vehicle passenger out of the vehicle during the course of a routine traffic stop for any reason regardless of whether the officer has reason to suspect foul play or anything problematic about the passenger." *Id.* (citing *Maryland v. Wilson*, 519 U.S. 408, 414–15 (1997). And, as the State notes, the Iowa Supreme Court has adopted an objective test for assessing the reasonableness of traffic stops, although it has not foreclosed an evaluation of an officer's subjective motivations in determining whether a traffic stop occurred. *See State v. Brown*, 930 N.W.2d 840, 849-50, 854 (Iowa 2019).

This case differs from *Wilson* and *Hauge* in that the deputy was not investigating the driver's traffic violation when he ordered Coleman out of the car. Rather, because the officer's primary focus was on removing Coleman from the

vehicle, the officer must have probable cause, or at least reasonable suspicion, for that seizure.

Coleman contends the deputy "failed to provide a reasonable articulable suspicion that [he] was intoxicated at the time of the accident" and his "concern was based on mere suspicion, nothing more." But Coleman is faced with recent precedent undercutting his argument. In *Price-Williams*, the court stated, "An officer may have reasonable suspicion to order a passenger out of the vehicle based on a combination of the officer's past experience with the passenger" and present acts. 973 N.W.2d at 562. As noted at the outset, witnesses told the deputy that Coleman traveled at an excessive rate of speed before crashing his vehicle. The crash occurred shortly before the deputy ordered Coleman out of his mother's vehicle. The circumstances and timing of the crash afforded the deputy reasonable suspicion to investigate the accident, whether or not he possessed identifiable indicia of intoxication. *See Brown*, 930 N.W.2d at 846 (citing the defendant's concession "that the officer's subjective motivations are irrelevant under the Fourth Amendment to the United States Constitution so long as there is probable cause to support the stop"). On our de novo review of the record, we conclude the district court appropriately denied Coleman's second suppression motion.

### B. Jury Instruction

At trial, Coleman objected to the district court's "failure to include absence of justification in the Court's draft, as an element of proof required for conviction." The district court declined to alter the instructions, finding no "evidence in the record to support" the addition, and stating justification "was not available to" a

person engaged in an illegal act, and was "not available to one who initially provokes the use of force against one's self."

Coleman takes issue with the court's ruling. In his view, the evidence "was more than sufficient to show that [he] reasonably believed [the deputy] posed a danger to him and his mother," the court did not identify the "illegal act" precluding the justification defense, and he "had every right to refuse [the deputy's] demand to exit the vehicle."

Iowa Code section 704.3, styled "[d]efense of self or another," states: "A person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself or another from any actual or imminent use of unlawful force." *See also* Iowa Code § 704.6 (setting forth circumstances in which "[t]he defense of justification is not available"). "[W]here the record does not contain substantial evidence of self defense the trial court is not obligated to instruct the jury on justification." *State v. Sharkey*, 311 N.W.2d 68, 72 (Iowa 1981); *see also State v. Delay*, 320 N.W.2d 831, 834 (Iowa 1982).

The record does not contain substantial evidence of self defense. *See State v. Rains*, 574 N.W.2d 904, 915 (Iowa 1998) ("[T]here is no substantial evidence in the record of an imminent use of unlawful force which would justify [the defendant's] response."); *Delay*, 320 N.W.2d at 835 (concluding the district court "properly refused to instruct on" justification where the defendant "deliberately turned the car around and drove it back toward the officers with the intent to seriously injure them" in response to a deputy's initial grabbing and pulling of him); *see also State v. Bedard*, 668 N.W.2d 598, 600 (Iowa 2003) ("[T]he assaultive conduct on which [the defendant's] conviction was based was not reasonable force

necessary to defend himself."). Coleman's claim of justification is inconsistent with his repeated denials that he struck the deputy's hand. In any event, the deputy repeatedly ordered Coleman out of the vehicle. Although the deputy became louder and angrier the longer Coleman remained recalcitrant, officers did not break the car window and pull Coleman out of the car until after Coleman hit the deputy's hand. *See State v. Hudson*, No. 15-1367, 2016 WL 7403711, at *4 (Iowa Ct. App. Dec. 21, 2016) (concluding "the deputy's use of force did not exceed the level necessary to accomplish the detention," "the gradual increase in his use of force was not excessive," the defendant "was not entitled to resist the detention by twice striking the deputy in the head," and "the district court correctly determined [the defendant] was not entitled to a justification instruction"); *State v. Hebeler*, No. 00-0377, 2001 WL 736025, at *6 (Iowa Ct. App. June 13, 2001) (stating a deputy was "justified in the use of such force as he reasonably believed to be necessary to effect the arrest" when the deputy's "forearm struck [the defendant] in the face" after the defendant "repeatedly refused [the deputy's] orders to step out of the car, and repeatedly rejected his assertions that she was under arrest" and when "[h]e reached through her open window to remove keys from the ignition," "she allegedly grabbed his arm to prevent him from doing so" and "bit him on the arm and attempted to close the door").

We conclude the district court correctly declined to instruct the jury on justification. In light of our conclusion, we need not address Coleman's remaining challenges to the district court's ruling on the instruction issue. *See, e.g.*, *State v. Wright*, No. 01-0420, 2002 WL 576332, at *3 (Iowa Ct. App. Feb. 20, 2002) ("The State further contends there is not substantial evidence to support the giving of the

requested instruction. We agree, and therefore find it unnecessary to address whether the defense is available against a charge of interference with official acts."); *Hebeler*, 2001 WL 736025, at *3 ("We find that we need not decide whether the trial court was correct in determining self-defense is not available as a defense to a charge of interference with official acts."); *State v. Terry*, No. 99-1617, 2001 WL 427787, at *5 (Iowa Ct. App. Apr. 27, 2001) (refusing the defendant's "invitation to address" whether the justification defense applied to interference with official acts on the ground that "[s]ubstantial evidence does not support the submission of a self-defense instruction in this case").

**AFFIRMED.**